## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICTOF OHIO

| | |
|---|---|
| BRIAN THOMAS FOLEY<br>279 MEADOW LN<br>GALION, OH 44833-2300<br>CRAWFORD COUNTY<br>     individually and on behalf of all<br>     others similarly situated | CASE |
|        Plaintiffs | JUDGE |
|    v. | |
| LG ELECTRONICS USA, INC.<br>1000 SYLVAN AVE<br>ENGLEWOOD CLIFFS NJ 07632 | **COMPLAINT**<br><br>(Jury Demand Endorsed Hereon) |
|     AND | |
| LG ELECTRONICS, INC.<br>10225 WILLOW CREEK RD<br>SAN DIEGO, CA 92131-1639<br>SAN DIEGO COUNTY | |
|     AND | |
| LG ELECTRONICS ALABAMA, INC<br>201 JAMES RECORD RD SW<br>HUNTSVILLE, AL 35824-1513 | |
|       Defendants | |

SERVE ALSO:

CSC- LAWYERS INCORPORATING SERVICE COMPANY
920 SYLVAN AVE
ENGLEWOOD CLIFFS, NJ 07632-3301

<u>INTRODUCTION</u>

As a class action this case is about Defendant's misrepresentation to the consumer marketplace that a certain stand-alone oven-range it manufacturers, advertises and markets meets the requirements of Jewish law as regards observance of the Sabbath, to wit:  *6.3 cu. ft. Capacity Electric Single Oven Range, LRE3083*  ("Oven").  As explained on the a leading appliance manufacturer's website:

> Traditional Jews adhere to religious laws that distinguish between holy and secular periods of time, with the holy times being annual holidays and the weekly Sabbath. Sabbath lasts from sundown Friday until after sundown on Saturday. These laws detail various activities that are restricted during holy times. Since some of those laws apply to the use of electricity, this presents some complications for observant Jews in using electrical appliances. Following consultation with a kosher certification agency, we have made some changes to the controls on many of our range products.
>
> **How does this feature work?**
> When the Sabbath mode feature is activated, the oven may be set either to go on immediately and stay on for a set amount of time, or turn off automatically after a set amount of time. **The oven will stay at the temperature the user selects when entering the Sabbath mode.** The digital control display will not show time, temperature, or selected oven function until the Sabbath mode feature is manually de-activated at the conclusion of the Sabbath or holiday. While this may seem unusual to many people, it makes it possible for observant Jews to serve warm food on holidays, the underlying principle being that it is permissible to use electricity that is already on but not to turn it on or off during the duration of the holiday. Observant Jews are thus prohibited from turning on or off the oven, or taking an action that causes the oven control display to change during the Sabbath or religious holidays.
> http://products.geappliances.com/appliance/gea-support-search-content?contentId=17357
> . . . last visited June 14, 2016)

<u>Central to this case</u>: "[n]o adjustment to the [inner-oven] temperature [for purposes of cooking] is permitted on Shabbos even in the Sabbath Mode."  http://www.star-k.org/articles/articles/kosher-appliances/appliance-memos/2048/oven-use-on-shabbos/ Compliance by oven manufacturers with this facet of Jewish law is monitored by the Star-K, "a highly reputable organization run by Baltimore's rabbinical council . . . ."  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988-989 n.207 (9th Cir. Cal. 2015).   The Star-K is thus the

exclusive representative the Kosher consumer to assure LG's compliance with Jewish law. Despite its representations to the Star-K (and public) to the contrary, however, LG has been manufacturing and selling non-compliant Ovens for a number of years. Indeed, although the Star-K has decertified LG appliances and their Sabbath Mode, LG and its authorized dealers continue to represent Ovens as possessing a Sabbath Mode and Star-K certification. Exhibit 1 (http://www.lg.com/us/cooking-appliances/lg-LRE3083ST-electric-range) . . . last visited June 14, 2016). Due to LG's conduct hereinbefore referenced, The Class did not receive the promised (or any) Sabbath Mode feature and many members of the Class have been misled into religious violations on each occasion the Oven has been used at home on the Sabbath.

While the facts of this case involve Sabbath observance under Jewish law, at its core it is still and primarily a consumer fraud case under statutory enactment. *Cf. Ahava Dairy Prods. Corp. v. Swiss Heritage Cheese, Inc*., 2002 U.S. Dist. LEXIS 25623, 2-3 (E.D.N.Y. Dec. 27, 2002). As an individual case this matter is about numerous breaches of warranty in addition to the Sabbath Mode, along with bad faith, and other tortious misconduct which will be detailed in Plaintiff's individual claim for relief.

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction under 28 U.S.C. §1332(d)(2) because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and this is a class action in which members of the Class and Defendant are citizens of different states.

2.     Venue is proper in this judicial district under 28 U.S.C. §1391 because Defendant does business throughout this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district. At all pertinent times, Defendant was and is in the business of manufacturing, marketing, advertising, distributing, and selling Ovens, throughout

this judicial district, Ohio, and the nation, by and through various authorized dealers. The Ovens that form the basis of this Complaint were placed in the stream of commerce by Defendant.

## PARTIES

3.      Defendant LG Electronics U.S.A., Inc. ("LG USA"), is a Delaware corporation having a principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

4.      Defendant LG Electronics, Inc. ("LG Electronics"), is a Korean corporation having a principal place of business at LG Twin Towers, 20 Yoido-dong, Yeongdeungpo-gu, Seoul, Korea 150-721.

5.      Defendant LG U.S.A., Inc. is a wholly owned subsidiary of LG Electronics.

6.      Defendant LG Electronics Alabama, Inc., another wholly owned subsidiary of LG Electronics, is a California corporation having its principal place of business at 201 James Record Rd SW, Huntsville, Al 35824-1513.

7.      Brian Thomas Foley at all relevant times has been resident of Crawford County, Ohio.

## BACKGROUND

8.      Brian Foley brings this action on behalf of himself and anyone who, within any applicable statute of limitations, purchased an Oven in the United States of America.

9.      LG Electronics, Inc. and LG Electronics USA, Inc. ("LG") manufacture, distribute, and/or sell Ovens.

10.      LG Electronics Alabama, Inc., administers warranty disputes for LG among other functions.

4

11.     Plaintiff bought an LG Oven at hhgregg in Crawford County, Ohio on or about November 12, 2015. His Oven and that of all Class members were manufactured, advertised, distributed, and/or sold by LG Electronics, Inc. and/or LG Electronics USA, Inc.

12.     Plaintiff studied the Oven at length prior to purchase and reviewed LG's statement of the Oven's features, including the Sabbath Mode and the relatively large capacity (6.3 cu. ft.) of the Oven.  Plaintiff had another oven off site, solely for use in his business, and purchased the Oven for family use primarily and, in the few instances where greater capacity was needed, e.g. extra large baking pans, for use in baking for resale.

13.      Prior to the time Star-K initially certified Ovens in or about 2012-2013, it issued specifications to LG and many other American oven manufacturers seeking certification of their respective Sabbath Modes. A key Sabbath specification was that heat adjustments shall not occur when the oven door is open and closed while the Sabbath Mode is engaged.  As a condition of certification, LG represented to Star-K that its Ovens satisfied the said specification ("Specification").

14.     Upon investigation in 2016, Star-K determined that LG, in fact, did not comply with Specification and, because LG failed to correct its non-compliance, Star-K decertified LG appliances. Exhibit 2 (http://www.star-k.org/appliance/#brand . . . last visited June 14, 2016).

15.     LG has been and is fully aware that Oven did and does not have a Star-K certified Sabbath Mode—yet continues to manufacture, distribute, advertise and/or sell Ovens with the defect, all the while claiming Star-K certification.  Exhibit 1

16.     Ovens sold with this defect number in the thousands.

17.     Consumers have no way of knowing that the Shabbos Mode is non-compliant because the adjustment of the electrical  heating element to warm the Oven interior, following

opening the Oven door to remove food, occurs without any audio or visual clue to alert the consumer to the occurrence of the ongoing Sabbath desecration.

18.     LG failed upon demand by Star-K to remedy the above-alleged problem by failing to implement a fix, and otherwise by failing to implement a national recall, give notice to Oven owners, give warning to potential purchasers, provide replacement or repair, or other measure.

19.     Plaintiff never used the Oven beyond initial efforts because, once LG deemed the Oven to be "unrepairable," it voided Plaintiff's warranty coverage.   Specifically, after affording Plaintiff a number of warranty calls and determining the Oven to be "not repairable," LG announced an unwritten policy as follows: even though Plaintiff located and used the Oven at home for his family, LG voided his warranty because Plaintiff had attempted (unsuccessfully) to use the Oven to bake items for resale.

20.     Plaintiff finally discarded the Oven and purchased one suitable to his needs.

## CLASS ALLEGATIONS

21.     This action is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Plaintiff and all other persons similarly situated, pursuant to Rule 23(B)(2)-(3) of the Federal Rules of Civil Procedure.[1]

22.     The Class ("Class") that Plaintiff seeks to represent is defined as follows:

> NATIONWIDE CLASS – During the fullest period allowed by law, all persons and entities nationwide that purchased an Oven, to wit: an *LG 6.3 cu. ft. Capacity Electric Single Oven Range,* further known as LRE3083ST, LRE3083SW, or LRE3083SB

---

[1] Both species of relief, i.e. damage and injunctive, are primary in this case. Damages are necessary if class members are to purchase a conforming oven, and injunctive relief is necessary to rectify class members' misconduct under Jewish law and advise class members of their peril.

6

23.     The Class excludes:  (1) LG, any entity in which LG has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors;  (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family;  (3) Class Counsel; and (4) claims for personal injury, wrongful death, and/or emotional distress.

24.     Plaintiffs also bring this action on behalf of the following Sub-Class, as more fully set forth below, and, to the extent appropriate, in the alternative to the claims asserted on behalf of the Nationwide Class:

> OHIO SUB-CLASS – During the fullest period allowed by law, all persons and entities in the State of Ohio that purchased an Oven, to wit: an *LG 6.3 cu. ft. Capacity Electric Single Oven Range,* further known as LRE3083ST, LRE3083SW, or LRE3083SB
>
> The Ohio Sub-Class excludes:  (1) LG, any entity in which LG has a controlling interest, and its legal representatives, officers, directors, employees, assigns, and successors;  (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family;  (3) Class Counsel; and (4) claims for personal injury, wrongful death, and/or emotional distress.

25.     Representative Plaintiff reserves the right to amend and modify his class definitions, or create additional sub classes, as this case evolves.

26.     Numerosity/Impracticability of Joinder:  The members of the Class are so numerous that joinder of all members would be impracticable.  The proposed Class includes, at a minimum, thousands of members.

27.     Commonality and Predominance:  There are common questions of law and fact present here.  These common legal and factual questions include, but are not limited to the following:

> a.  whether LG engaged in a pattern of fraudulent, deceptive and misleading conduct targeting the public through the marketing, advertising, promotion and/or sale of Product as Sabbath compliant;

7

    b.   whether LG's acts and omissions violated CSPA;

    c.   whether LG made material misrepresentations of fact or omitted    material facts to Plaintiff and the Class in the course of the marketing, promotion, advertising and sale of Ovens, which material misrepresentations or omissions operated as deceit upon Plaintiff and the Class;

    d.   whether, as a result of LG's misconduct, Plaintiff and the Class are entitled to equitable relief under CSPA and, if so, the nature of such relief; and

    e.   whether, as a result of LG's misconduct, Plaintiff and the Class are entitled to damage relief under CSPA and, if so, the nature of such relief;

    28.    Typicality:  Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent.  Plaintiff and all Class members have been or may be injured by the same wrongful practices in which Defendant has engaged.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

    29.    Adequacy:  Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained Class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiff nor his attorneys have any interests that are contrary to or conflicting with the Class.  Plaintiff suffered helplessness in contending with LG prior to being alerted to the availability of class action relief; and he is anxious to see justice done.

    30.    Injunction:  LG has acted on grounds generally applicable to the Class and, as such, preliminary and final injunctive relief with regard to the members of the Class as a whole is appropriate.

31.     R.C. 1345.09(D) as interpreted by the Supreme Court of Ohio specifically permits any consumer to obtain an injunction upon a showing of an ongoing CSPA violation, as is present here.

## COUNT 1

### (Asserted On Behalf Of Nationwide Class)
### VIOLATIONS OF MAGNASSON-MOSS ACT – EXPRESS WARRANTY
### (15 U.S.C. §§ 2301-2312)

32.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

33.     The Ovens are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

34.     Plaintiffs, Class, and Sub-Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

35.     Defendant is a "supplier" as that term is defined by 15 U.S.C. § 2301(4).

36.     Defendant is a "warrantor" as that term is defined by 15 U.S.C. § 2301(5).

37.     Defendant provided Plaintiffs, Class and Sub-Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

38.     Section 15 U.S.C. § 2310(d)(1) provides that a consumer who is damaged by the failure of the supplier, warrantor, or service contractor to comply with any obligation under this title, or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state.

39.     When Plaintiff and the members of the Class purchased their Ovens, Defendant expressly warranted under its Warranty that it would "repair or replace your product, at LG's option, if it proves to be defective in material or workmanship."  Exhibit 3.

9

40.     Defendant breached these express warranties (and continues to breach these express warranties) because it did not (and does not) repair or replace, or cover the expenses associated with affording class members the benefit of, a "Sabbath Mode." LG further breached these express warranties because the Sabbath Mode in the Ovens was defective at the time of sale, LG knew that the defect was present and that Plaintiff and class members could not detect its presence, and LG did not disclose the defective or repair the defect prior to each or any sale.

41.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to limit its express warranties in a manner that would exclude or limit coverage for the defective Sabbath Mode that was present as of the time of sale is unconscionable, and any such effort to disclaim or otherwise limit liability or warranty coverage for the defects at issue is null and void.

42.     All jurisdictional prerequisites have been satisfied.

43.     Accordingly, Plaintiffs and the Class members suffered damages caused by Defendant's breach of the express warranties and are entitled to recover damages, including but not limited to repair, replacement or diminution of value, equitable relief, and attorneys fees and costs pursuant to 15 U.S.C. § 2310.


**OHIO COUNTS**

**COUNT 2 (Ohio Sub-Class)**
**VIOLATION OF OHIO CONSUMER SALES PRACTICES ACT (O.R.C. § 1345.01)**

44.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

45.     The Ohio Consumer Sales Practices Act, O.R.C. § 1345.02, prohibits unfair or deceptive acts or practices in connection with a consumer transaction.  For example, the Act prohibits suppliers from representing that goods have characteristics, uses or benefits they do not have; that their products or goods are of a particular standard, quality, or grade they are not; that the products or goods have been supplied in accordance with a previous representation, if it has not; that the supplier has a sponsorship, approval, or affiliation that the supplier does not have; and that the transaction involves a warranty, rights, remedies, or obligations if that representation is false.  Defendant's actions as described throughout this Complaint violate each of these provisions.

46.     The Ohio Consumer Sales Practices Act, O.R.C. § 1345.03, also prohibits unconscionable acts or practices in connection with a consumer transaction, which includes the circumstances at issue here, where Defendant has knowingly taken advantage of the inability of consumers reasonably to protect their interests because of the consumers' ignorance of the latent Sabbath Mode defect in particular.

47.     Defendant is a "supplier" as that term is defined in O.R.C. § 1345.01(C).

48.     Plaintiff and all others in the Ohio Sub-Class are "consumers" as that term is defined in O.R.C. § 1345.01(D).

49.     Defendant's conduct alleged above constitutes unfair, deceptive, and unconscionable acts and practices in connection with a consumer transaction in violation of O.R.C. § 1345.02 and § 1345.03.  The unfair, deceptive, and unconscionable acts and practices occurred before, during, and after the transactions.

50.     Defendant's conduct as alleged above constitutes an act or practice previously declared by Ohio courts to violate Ohio's Consumer Sales Practices Act and was committed after

11

the decisions containing these determinations were made available for public inspection under division (A)(3) of O.R.C. § 1345.05.  The applicable rule and Ohio court opinions include those cited and referenced in *Nessle v. Whirlpool Corp.*, 2008 U.S. Dist. LEXIS 56940 (N.D. Ohio July 25, 2008) (Held: "[p]laintiff does cite to several Ohio cases . . . Plaintiff's claim for OCSPA violations is able to withstand Defendant's Motion to Dismiss.").

51.     Defendant's conduct caused damages to Plaintiff and the consumers in the Ohio Sub-Class as alleged.

52.     Accordingly, Plaintiff and the consumers in the Ohio Sub-Class are entitled to recover damages and attorneys fees pursuant to O.R.C. § 1345.09.

53.     Accordingly, Plaintiff and the Ohio Sub-Class are entitled to injunctive relief. See the first sentence of R.C. 1345.09 ("For a violation of Chapter 1345 of the Revised Code, a consumer has a cause of action and is entitled to relief as follows . . ."), coupled with subsections (B) and (D) thereof ("Any consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates this chapter.")

### COUNT 3 (Ohio Sub-Class)
### BREACH OF EXPRESS WARRANTY (O.R.C. § 2-313)

54.     Plaintiff Brian Thomas Foley re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

55.     As an express warrantor and manufacturer, LG had certain obligations under the O.R.C. 1302.26, U.C.C. § 2-313, to conform the Ovens to the express warranties.

56.     When Ohio Plaintiff and the members of the Sub-Class purchased their Ovens Defendant expressly warranted under its Warranty that it would "repair or replace your product, at LG's option, if it proves to be defective in material or workmanship."

57.     The defects at issue in this litigation were present at the time of sale to Plaintiff and members of the Ohio Sub-Class.

58.     Defendant breached these express warranties (and continues to breach these express warranties) because it did not (and does not) repair or replace, or cover the expenses associated with affording class embers the benefit of, a "Sabbath Mode." LG further breached these express warranties because the Sabbath Mode in the Ovens was defective at the time of sale, LG knew that the defect was present and that Plaintiff and class members could not detect its presence, and LG did not disclose the defect or repair the defect prior to each or any sale.

59.     Pursuant to the express warranties, LG was obligated to pay for or reimburse Plaintiff and the Ohio Sub-Class members for costs incurred or to be incurred in ameliorating the defect at issue.

60.     Pursuant to the express warranties, LG also was obligated to repair the defects.

61.     LG has failed and refused to conform the Ovens to the express warranties and LG's conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

62.     Plaintiff and Ohio Sub-Class members have performed each and every duty required of them under the terms of the warranties, except as may have been excused or prevented by the conduct of LG or by operation of law in light of LG's unconscionable conduct described throughout this Complaint.

63.     LG received timely notice of breach from Star-K, which represents Plaintiff and class members as to Sabbath Mode (indeed LG knew or was grossly negligent in not knowing of the defects prior to offering the Ovens for sale) and, notwithstanding such notice, LG has failed and refused to offer an effective remedy.

13

64.     In its capacity as a supplier and/or warrantor, and by the conduct described herein, any attempt by Defendant to limit its express warranties in a manner that would exclude or limit coverage for the defective Sabbath Mode that was present as of the time of sale is unconscionable and any such effort to disclaim or otherwise limit liability or warranty coverage for the defects at issue is null and void.

65.     Accordingly, Plaintiff and the Class members suffered damages caused by Defendant's breach of the express warranties and are entitled to recover damages, including but not limited to repair, replacement or diminution of value, and equitable relief.

**COUNT 4 (Ohio Sub-Class)**
**BREACH OF IMPLIED WARRANTY IN TORT**
**(Tortious Breach of Warranty)**

66.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

67.     LG impliedly represented and warranted that the LG Ovens were free of defects, merchantable, and fit for their intended purpose.  LG breached these representations and implied warranties.  Ovens were unfit for their intended use and were not of merchantable quality as warranted by LG.

68.     Accordingly, Plaintiff and the Class members suffered damages caused by Defendant's tortious breach implied warranty and they are therefore entitled to recover damages, including but not limited to repair, replacement or diminution of value, and equitable relief.

**COUNT 5 (Ohio Sub-Class)**
**NEGLIGENT DESIGN/ENGINEERING/MANUFACTURING**

69.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

14

70.    Defendant owed Plaintiff and the Ohio Sub-Class a non-delegable duty to exercise ordinary and reasonable care to properly design, engineer, and manufacture the Sabbath Mode against foreseeable hazards and malfunctions and to design, engineer and manufacture said feature so that it would prevent the Oven from heating up upon cooling while Sabbath Mode was engaged..

71.     Defendant also owes a continuing duty to notify Plaintiff and the Ohio Sub-Class of the problem at issue and to repair the defects or replace the unit.

72.   The foreseeable hazards and malfunctions include, but are not limited to, the difficulty and extra expense of replacing the Sabbath Mode or replacing the unit in its entirely if necessary.

73.    Plaintiff and the Ohio Sub-Class were not and could not reasonably have been aware of the defects described above and their latent shortcomings.

74.    There existed at all relevant times alternative Sabbath Modes which were both technically and economically feasible for LG to employ and institute.

75.    Defendant did not design, engineer, or manufacture the Ovens with reasonable care.

76.    As to Defendant's manufacture of the Ovens, the defective Sabbath Mode differed in a material way from Defendant's obligatory design specifications as promulgated by Star-K, accepted by LG, and represented by LG (to the Star K and the Class) to be satisfied.

77.    The Ovens were defective as herein alleged at the time they left Defendant's factories.

78.    Defendant breached its duty owed to Plaintiff and the Ohio Sub-Class to design, manufacture, and engineer the Ovens against such foreseeable hazards and malfunctions.

15

79.     As a direct and proximate result of this breach, Plaintiff and the Ohio Sub-Class have suffered damages.

80.     Accordingly, Plaintiff and the Ohio Sub-class are entitled to recover damages, including but not limited to repair, replacement or diminution of value and equitable relief.


## PLAINTIFF'S INDIVIDUAL CLAIM

81.     Plaintiff re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

82.     Plaintiff bought an LG Oven, LRE3083ST, on or about November 12, 2015, primarily for home use (70-75%), but also for business use (25-30%) limited to a need to accommodate larger-than-normal baking pans.

83.     Plaintiff has a home bakery outside living quarters and he sought a top of the line oven, primarily for family purposes in the kitchen at home, but also to supplement his bakery operations on such infrequent occasions as he needed extra large capacity.

84.     LG advertised and marketed the range as a 6.3 cubic foot true convection oven, but Plaintiff's Oven was not true convection as it did not have a heating element around the fan on the back oven wall.

85.     Plaintiff tried to use the range for the first time by placing a few breads in the oven on the first try and then a few pies on the second try. The bread on the top rack got completely burnt. The top of the breads on the bottom rack were raw and the bottoms were burnt.

86.     Upon calling the corporate executive offices of the Alabama defendant, Plaintiff was told that they would file his complaint to the appropriate people but "don't count on anything being done," or words of similar import.

16

87.     Plaintiff complained to hhgregg, that sold him the oven; and hhgregg replaced the oven, unfortunately, to no avail.  The replacement Oven(s) were similarly defective.

88.     LG sent out repairmen who serviced the Oven at Plaintiff's house on 3 separate occasions. After replacing computer circuit boards, relay boards and harnesses, and possibly installing an element for convection, the unit still wasn't baking properly.  The final words from the LG tech to the on-site technician were, substantially, "please put in your notes that this unit is deemed unrepairable".

89.     When Plaintiff later followed up directly with LG to advise that upper-rack products were not baking correctly and lower-rack products were burning, .LG's corporate executive, Teresa, said "since you're using the oven to make items for customers, we are now going to void your warranty." Plaintiff exclaimed: "[w]hy are you voiding my warranty?" Teresa explained that even though the Oven was located at home, LG's (unwritten) policy was to void the warranty if any items baked in the Oven were thereafter sold commercially. Teresa agreed that said policy is stated nowhere on their website nor in their owners manual.  She then told Plaintiff that if he wanted to take legal action to go ahead; that LG's attorneys are much more qualified than he, they have more money than he does and, succinctly, "good luck."

90.     Plaintiff tried filing a complaint with the Ohio Attorney General's office and the Better Business Bureau but was then told that unfortunately, because LG's corporate office is located in Korea and not in the United States, there was no recourse for him.

91.     On December 15, 2015 LG Executive Services formally informed Plaintiff that his claim was denied and there would be no refund.

92.     LG thus breached its contract and warranty with Plaintiff, because LG had a duty to repair or replace all the aforementioned defects but failed to do so when it tried to repair those

defects Plaintiff identified, deceived Plaintiff as to the Sabbath Mode, and thereafter voided his

warranty.

93.     LG's warranty contains exclusions as follows (Exhibit 3):


THIS LIMITED WARRANTY DOES NOT APPLY TO:
1. Service calls to correct the installation of your appliance, to instruct you how to
use your appliance, to replace house fuses or correct house wiring, or to replace
owner-accessible light bulbs.
**2. Repairs when your appliance is used in other than normal, single-family
household use.**
3. Pickup and delivery. Your appliance is designed to be repairable in the home.
4. Damage resulting from accident, alteration, misuse, abuse, fire, flood, improper
installation, acts of God, or use of products not approved by LG Corporation.
5. Repairs to parts or systems resulting from unauthorized modifications made to
the appliance.
6. Replacement parts or repair labour costs for units operated outside the United
States.
7. Any labour costs during the limited warranty period.

This warranty is extended to the original purchaser for products purchased for
home use within the U.S.A. In Alaska, the warranty excludes the cost of shipping
or service calls to your home. Some states do not allow the exclusion or limitation
of incidental or consequential damages, so this exclusion or limitation may not
apply to you. This warranty gives you specific legal rights, and you may also have
other rights which vary from state to state. To know what your legal rights are,
consult your local or state consumer affairs or your state's Attorney General.

94.     Originally LG had no difficulty with providing technicians and service but, after

failing to repair the oven, it evidently sought to use Exclusion No. 2 ("normal, single-family

household use") as an "out."  In fact, Plaintiff had merely tried to make a few pies and breads at

his house, in the Oven that was purchased primarily for personal and family use. Exclusion No. 2

does not exclude the warranty **before** it is used commercially, simply because a consumer has an

intent to use the oven infrequently to bake goods for resale. It obviously refers to not covering

repairs on units whose use vastly departs from "normal household use."  By refusing warranty

coverage for the Oven after a couple days of attempted baking, LG is in bad faith.  It's initial

18

willingness to repair the unit until it was deemed "unrepairable" is proof that its present refusal to reimburse Plaintiff for the unit is disingenuous or worse.  Its logic that the warranty was void because Plaintiff had baked items intended to be sold, is an utterly self-serving artifice made of whole cloth.

95.     The initial representations of a Sabbath Mode with Star-K certification, together with the post-transactional deceptive conduct in LG misrepresenting to Plaintiff his legal rights and obligations under the warranty, are violations of the Ohio Consumer Sales Practices Act, 1345.02(B)-(C).

96.     Finally, after having the unit in his kitchen for months, and given that LG refused his claim and did not retrieve the unit, and further that he could not secure assistance through the BBB or OAG, Plaintiff disposed of the Oven.

97.     Plaintiff's damages are $1,200 for the unit and lost profits for the down time.


WHEREFORE Plaintiff Foley prays for judgment on his individual claim in an amount to be determined, then trebled, together with attorney fees and the costs of this action.


## PRAYER FOR RELIEF

Therefore, Plaintiff seeks judgment against the defendant and relief as follows:

A.     An order certifying this action as a class action under Civil Rule 23;

B.     An order appointing the named plaintiff as the class representative;

C.     An order appointing undersigned counsel as class counsel;

D.     Actual damages;

E.     Punitive damages as allowed by law;

19

F.      Statutory damages and attorney's fees under R.C. 1345.09 or any other applicable

       provision of statutory;

G.      Costs of suit;

H.      Pre- and post-judgment interest;

I.      Declaratory, equitable, and injunctive relief;

J.      Such other relief as this Court finds just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


          <u>/s/ Mark Schlachet</u>
          Mark Schlachet (0009881)
          3515 Severn Road
          Cleveland, Ohio 44118
          Telephone: (216) 225-7559
          Facsimile: (216) 932-5390
          markschlachet@me.com

          *Attorney for Brian Thomas Foley*
           *and the Putative Class*

# EXHIBIT 1

## 6.3 cu. ft. Capacity Electric Single Oven Range with True Convection and EasyClean®

LRE3083SB | Smooth Black



· · · ·

## OVEN FEATURES

| | |
|---|---|
| Configuration | Freestanding Electric Oven with Storage Drawer |
| EasyClean® Technology | Yes |
| True Convection | Yes |
| Bake Element | 3400W / 6 Pass (Hidden Bake) |
| Broil Element | Sheathed Heater, 4200W / 6 Pass |
| Oven Cooking Technology | True Convection |
| Oven Cooking Modes | Bake, Broil, Conv Bake, Conv Broil, Warm, Proof, Favorites |
| Cleaning | Self Clean / EasyClean® |
| Oven Light | Yes |
| Oven Rack | 3 Standard Racks |
| Door Lock | Yes |
| Sabbath Mode | Star-K Certified |

# EXHIBIT 2



# EXHIBIT 3

# WARRANTY (ONLY USA)

LG Electronics Inc. will repair or replace your product, at LG's option, if it proves to be defective in material or workmanship under normal use, during the warranty period set forth below, effective from the date of original consumer purchase of the product. This limited warranty is good only to the original purchaser of the product and effective only when used in U.S.A.

| WARRANTY PERIOD | HOW SERVICE IS HANDLED |
|---|---|
| **One Year**<br>From the date of the original purchase. | **Any part** of the oven that fails due to a defect in materials or workmanship. During this full **one-year warranty**, LG will also provide, **free of charge**, all labour and in-home service to replace the defective part. |

THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. TO THE EXTENT ANY IMPLIED WARRANTY IS REQUIRED BY LAW, IT IS LIMITED IN DURATION TO THE EXPRESS WARRANTY PERIOD ABOVE. LG WILL NOT BE LIABLE FOR ANY CONSEQUENTIAL, INDIRECT, OR INCIDENTAL DAMAGES OF ANY KIND, INCLUDING LOST REVENUES OR PROFITS, IN CONNECTION WITH THE PRODUCT. SOME STATES DO NOT ALLOW LIMITATION ON HOW LONG AN IMPLIED WARRANTY LASTS OR THE EXCLUSION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATIONS OR EXCLUSIONS MAY NOT APPLY TO YOU.

### THIS LIMITED WARRANTY DOES NOT APPLY TO:

1. Service calls to correct the installation of your appliance, to instruct you how to use your appliance, to replace house fuses or correct house wiring, or to replace owner-accessible light bulbs.
2. Repairs when your appliance is used in other than normal, single-family household use.
3. Pickup and delivery. Your appliance is designed to be repairable in the home.
4. Damage resulting from accident, alteration, misuse, abuse, fire, flood, improper installation, acts of God, or use of products not approved by LG Corporation.
5. Repairs to parts or systems resulting from unauthorized modifications made to the appliance.
6. Replacement parts or repair labour costs for units operated outside the united states.
7. Any labour costs during the limited warranty period.

This warranty is extended to the original purchaser for products purchased for home use within the U.S.A. In Alaska, the warranty excludes the cost of shipping or service calls to your home. Some states do not allow the exclusion or limitation of incidental or consequential damages, so this exclusion or limitation may not apply to you. This warranty gives you specific legal rights, and you may also have other rights which vary from state to state. To know what your legal rights are, consult your local or state consumer affairs or your state's Attorney General.

### CUSTOMER ASSISTANCE INFORMATION:

| To Prove Warranty Coverage | Retain your Sales Receipt to prove date of purchase.<br>A copy of your Sales Receipt must be submitted at the time warranty service is provided. |
|---|---|
| To Obtain the Nearest Authorized Service Center or Sales Dealer, or to Obtain Product, Customer, or Service Assistance | Call 1-800-243-0000 (Phone answered 24 hours - 365 days a year) and choose the appropriate prompt from the menu; or visit our website at: http://www.lg.com |